UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Dennis Villano

     v.                              Civil No. 19-cv-808-LM
                                          Opinion No. 2020 DNH 034

Long Island Pipe Supply,
Inc., et al.


**O R D E R**

Dennis Villano brings this action against Long Island Pipe
Supply, Inc. ("LIPS"), Long Island Pipe Supply of Massachusetts,
Inc. ("LIPSMA"), Long Island Pipe Supply of New Hampshire, Inc.
("LIPSNH" and, collectively with LIPS and LIPSMA, the "LIPS
companies")[1], Robert Moss ("Robert"), Bradley Moss ("Bradley"),
and Michael Moss ("Michael" and, collectively with Robert and
Bradley, the "Mosses"). Against the LIPS companies, Villano
asserts claims under the Age Discrimination in Employment Act
(the "ADEA") for age discrimination and retaliation. Against
all defendants, Villano asserts parallel age discrimination and
retaliation claims under both New Hampshire and Massachusetts
law. Now before the court is defendants' motion to dismiss

---

[1] As will be discussed below, prior to the initiation of
these proceedings, LIPS changed its name to Miles Moss of New
York, Inc., LIPSNH changed its name to Miles Moss of New
Hampshire, Inc., and LIPSMA changed its name to Miles Moss of
Massachusetts, Inc. To reduce the likelihood of confusion, the
court will refer to the corporate defendants by the names under
which they are identified in Villano's Complaint.

Villano's claims against the LIPS companies, Robert, and Bradley for insufficient service of process and to dismiss Villano's claims against LIPSMA and the Mosses for lack of personal jurisdiction.

## BACKGROUND FACTUAL ALLEGATIONS

Villano worked for the LIPS companies as their Vice President of Information Technology from July 2012 through the termination of his employment in July 2018.  Villano contends that at all times during the tenure of his employment, the three LIPS companies were his joint employers and Robert, Bradley, and Michael were his supervisors and managers.

Villano was 61 years old when he first began working for the LIPS companies and 67 as of the date of his termination. According to Villano, he regularly experienced age discrimination in the LIPS companies' workplace.  Specifically, Robert repeatedly told Villano that he was the LIPS companies' oldest employee, mocked him for using dated cultural references, asked him when he planned to retire, and insinuated that he was too old to be driving.  On at least one occasion, Robert blamed Villano for a younger employee's mistake.  In addition, when the LIPS companies needed to hire a new employee, Bradley asserted that he did not want to hire anyone over 40 years old, and that

new hires should be "right out of college."  Doc. no. 1 at ¶ 36.
When Villano complained regarding those statements, Robert
dismissed his concerns and expressed agreement with Bradley's
age-biased statements.

In 2018, the LIPS companies hired a younger employee
ostensibly to fill a position left open after the termination of
another information technology employee, but actually to take
over many of Villano's employment responsibilities.  Villano
viewed the reduction in his responsibilities as a demotion,
notwithstanding that he did not experience a reduction in
compensation or benefits.  Shortly thereafter, according to
Villano, the Mosses terminated his employment due to his age.

**DISCUSSION**

I.   Sufficiency of Service

The LIPS companies, Robert, and Bradley (collectively, the
"service defendants") challenge the sufficiency of Villano's
efforts to serve them with process in this action.  In essence,
the service defendants argue that Villano attempted to serve
them at incorrect addresses.

A.  Legal Standard

Motions to dismiss for insufficient service of process are governed by Federal Rule of Civil Procedure 12(b)(5).[2]  Fed. R. Civ. P. 12(b)(5).  Under Rule 12(b)(5), objections to the validity of service of process must be specific and must identify with particularity the manner in which the plaintiff has failed to satisfy the service requirements.  See Taite v. Bridgewater State Univ., 236 F. Supp. 3d 466, 472 (D. Mass. 2017) (citing 2 Moore's Federal Practice § 12.33[1] (3d ed. 2013)); see also, e.g., O'Brien v. R.J. O'Brien & Assocs., 998 F.2d 1394, 1400 (7th Cir. 1993).

Once the objecting party has properly challenged service of process, the burden shifts to the serving party to prove that service was sufficient.  Rivera-Lopez v. Municipality of Dorado, 979 F.2d 885, 887 (1st Cir. 1992).  A docketed return of service generally creates a rebuttable, prima facie presumption that service was sufficient.  Blair v. City of Worcester, 522 F.3d

_____

[2] Defendants purport to move under Federal Rule of Civil Procedure 12(b)(4).  However, Rule 12(b)(4) governs motions to dismiss for insufficient process, and defendants offer no evidence or argument that there was any defect in the form of process at issue (notably, defendants do not assert that process was insufficient because the summons and complaint identifies the corporate defendants by their former corporate names).  Instead, defendants argue only that service of process was insufficient; motions to dismiss for insufficient service of process are governed by Rule 12(b)(5).  Blair v. City of Worcester, 522 F.3d 105, 110 (1st Cir. 2008).

105, 111 (1st Cir. 2008). The challenging party may rebut the presumption through presentation of evidence, and the serving party may either present countervailing evidence or seek a stay of proceedings pending discovery and/or an evidentiary hearing. Id. at 112-115. Where evidence establishes the insufficiency of service, courts enjoy broad discretion either to dismiss an action entirely for failure to effect service or to quash the defective service and permit re-service, meanwhile retaining the case. See Henderson v. United States, 517 U.S. 654, 662 (1996); see also, e.g., Ramirez De Arellano v. Colloides Naturels Int'l, 236 F.R.D. 83, 85 (D.P.R. 2006).

B. Analysis

Before a federal court may exercise jurisdiction over a defendant, that defendant must first be properly served with process under Federal Rule of Civil Procedure 4. See United States v. Carr, Case No. 2:11-cv-00280-GZS, 2012 U.S. Dist. LEXIS 27930, *4 (D. Me. Mar. 2, 2012); see also, e.g., Direct Mail Specialists v. Eclat Computerized Techs., Inc., 840 F.2d 685, 688 (9th Cir. 1988) (citations omitted). This is not because service of process is itself a jurisdictional requirement, but rather because proper service is the mechanism through which exercise of jurisdiction is effected:

> Before a federal court may exercise personal
> jurisdiction over a defendant, the procedural
> requirement of service of summons must be satisfied.
> "Service of summons is the procedure by which a court
> having venue and jurisdiction of the subject matter of
> the suit asserts jurisdiction over the person of the
> party served." Mississippi Publishing Corp. v.
> Murphree, 326 U.S. 438, 444-445 (1946). Thus, before
> a court may exercise personal jurisdiction over a
> defendant, there must be more than notice to the
> defendant and a constitutionally sufficient
> relationship between the defendant and the forum.
> There also must be a basis for the defendant's
> amenability to service of summons. Absent consent,
> this means there must be authorization for service of
> summons on the defendant.

Omni Capital Int'l v. Rudolf Wolff & Co., 484 U.S. 97, 104

(1987) (internal modifications omitted).


    1.   Sufficiency of Service on the LIPS Companies

Under Federal Rule of Civil Procedure 4, a plaintiff may

serve a corporate defendant within a judicial district of the

United States by delivering a copy of the summons and complaint

to an officer, to a managing or general agent of the defendant,

or to any authorized agent of the defendant for service of

process. Fed. R. Civ. P. 4(h)(1)(B). In the alternative, a

plaintiff may serve a corporate defendant by following the law

governing service of either the state where the district court

is located or the state where the defendant is located when

service is made. Fed. R. Civ. P. 4(h)(1)(A), 4(e)(1).

Here, Villano attempted service on all the LIPS companies in New York, on LIPSNH additionally in New Hampshire, and on LIPSMA additionally in Massachusetts. Each of those states has different service requirements.

Under New Hampshire law, service on a corporation may be accomplished by serving the corporation's registered agent. RSA 293-A:5.04, 15:10. In the alternative, a plaintiff may serve a corporation by mailing a copy of the summons and complaint by registered or certified mail to the corporate secretary at the corporation's principal office (in the case of a domestic corporation) or to the address of the principal office listed in the corporation's most recent annual report (in the case of a foreign corporation). Id.

Under New York law, there are two alternative methods for serving a corporation. First, the plaintiff may provide a copy of the summons to an officer, director, or managing or general agent of the corporation. NY CPLR § 311(a)(1). Second, the plaintiff may deliver duplicate copies of the summons, together with a statutory fee, to the office of the New York Secretary of State. NY CPLR §§ 306(b)(1), 307(b).

Under Massachusetts law, service on a domestic corporation is accomplished by delivering a copy of the summons and complaint to an officer or a managing or general agent of the

corporation at its principal place of business.  Mass. R. Civ.
Pr. 4(d)(2).

As a matter of federal procedural law, minor formal defects
in service may be disregarded so long as the defendant receives
actual notice of the complaint and the method of service is in
substantial compliance with the requirements of Rule 4.  See
Precision Etchings & Findings, Inc. v. LGP Gem, Ltd., 953 F.2d
21, 23-25 (1st Cir. 1992) (citations omitted).


### a.  Service on LIPS

On July 11, 2019, LIPS amended its articles of
incorporation for the sole purpose of changing its name to Miles
Moss of New York, Inc.  Doc. no. 15-2, exh. 3.  Both before and
after that amendment, the records of the New York Department of
State reflected that LIPS's principal business office and
address for service of process were 586 Commercial Avenue,
Garden City, NY, 11530.  Id. at 1.

Villano attempted to serve LIPS on October 28, 2019, by
hand-delivering a copy of the summons and complaint to the
Garden City address, specifically to a person identified in the
service return documents as the "Branch Manager" of the business
located at that address.  Doc. no. 8, at 3.  In addition, also
on October 28, 2019, Villano mailed a copy of the summons and

complaint to LIPS at the Garden City address through regular
mail.  Id.[3]  At the time Villano made these efforts to serve
LIPS, the records of the New York Department of State indicated
that the Garden City address was LIPS's principal business
office and designated address for service of process.  Doc. no.
16, at ¶¶ 2, 6; doc. no. 15-2, exh. 3, at 1.  Moreover, this
court can properly take judicial notice (and does so notice)
that, as of the date of this order, the New York Department of
State's Corporation and Business Entity Database continues to
identify the Garden City address as the principal office and
designated address for service of process for Miles Moss of New
York, Inc. (formerly known as LIPS).[4]

        In support of their challenge to the sufficiency of service
on LIPS, the service defendants offer the affidavit of Kathy
Fields, the former Chief Financial Officer of all three of the
LIPS companies.  Doc. no. 12-2.  Fields states that on July 8,

---

    [3] On October 29, 2019, Villano made a further effort to
serve LIPS by hand-delivery and regular mail at a residence
located at 20 Eagle Chase, Woodbury, NY 11797.  Doc. no. 8, at
2.  Because nothing in the record suggests that LIPS has ever
maintained offices at the Woodbury address for any purpose, the
court disregards Villano's attempt to serve LIPS at that
address.

    [4] Courts may properly take notice sua sponte of facts not
subject to reasonable dispute where they are subject to accurate
and ready determination from reliably accurate sources.  Fed. R.
Evid. 201(b)(2), (c).

2019, the Mosses caused the sale of all assets of the LIPS companies to a third party, Core & Main LP ("Core").  Id. at ¶ 4.  Fields states that, following that sale, the Garden City address ceased to be a business location of LIPS, and no person working at that address was an employee or agent LIPS for any purpose, including for purposes of service of process.  Doc. no. 12-2, at ¶¶ 4-7.

Notwithstanding Fields' affidavit, LIPS did not at any material time amend its designations with the New York Department of State.  Thus, as a matter of New York law, at the time of service the Garden City address was LIPS's principal business address and address for service of process.  NY BCL §§ 304(d), 408(1), 408(7).  Even fully crediting Fields' testimony that no person employed at that address was in fact an agent of LIPS for any purpose, Villano's hand-delivery of the summons and complaint to a person identified as a Branch Manager of the business operating at LIPS's principal business address constituted, at minimum, substantial compliance with the requirements of Rule 4(h)(1)(B).  Similarly, Villano's having sent copies of the summons and complaint through regular mail to LIPS's designated address for service of process constituted substantial compliance with the requirements of RSA 293-A:15.10. In addition, it is undisputed that LIPS received timely actual

notice of this action and actually received copies of the
summons and complaint.  See, e.g., doc. no. 15-2 at ¶ 5.  It
follows that such substantial compliance with the formal
requirements of service is sufficient for purposes of Rule
12(b)(5).  See Precision Etchings, 953 F.2d at 23-25.  The
service defendants' motion to dismiss is therefore denied as to
defendant LIPS.


                    b.   Service on LIPSNH

      On January 4, 2019, LIPSNH filed an annual report with the
New Hampshire Department of State reciting the Garden City, New
York address as its principal office address and as the business
address of all three Mosses.  Doc. no. 15-2, exh. 5.  The 2019
annual report recited a Concord, New Hampshire, address for the
company's registered agent.  Id.  However, effective January 14,
2019, LIPSNH filed a statement of change with the New Hampshire
Department of State, naming Robert as LIPSNH's registered agent
for service of process and stating the registered company's
address for service as 50B Northwestern Drive, Unit 6, Salem, NH
03079.  Doc. no. 15-2, exh. 6.  The January 14 amendment
effected no change to the recorded principal business office of
the company or to the recorded business offices of the Mosses.

On April 30, 2019, LIPSNH amended its articles of incorporation solely to change its name to Miles Moss of NH, Inc.

Villano attempted to serve LIPSNH on October 25, 2019, by hand-delivering a copy of the summons and complaint to the Salem address, specifically to a person identified in the service return documents as authorized to accept service on behalf of "Robert Moss." Doc. no. 4 at 2. On October 28, 2019, Villano further attempted to serve LIPSNH by hand-delivering a copy of the summons and complaint to a person employed at the Garden City address. Doc. no. 9 at 1.[5] At the time Villano made these efforts to serve LIPSNH, the records maintained by the New Hampshire Department of State indicated that the Garden City address was LIPSNH's principal business address, that Robert was LIPSNH's registered agent, and that the Salem address was LIPSNH's address for service of process. Doc. no. 16 at ¶¶ 2, 6; Doc. no. 15-2, exh. 5. Pursuant to Rule 201, the court takes judicial notice that the corporate records database of the Corporate Division of the New Hampshire Department of State continues to identify the Garden City address as the principal

_____

[5] On October 29, 2019, Villano made a further effort to serve LIPSNH by hand-delivery and regular mail to the Woodbury, New York address. Because nothing in the record suggests that LIPSNH has ever maintained offices at the Woodbury address for any purpose, the court disregards the attempt to serve LIPSNH at that address.

business address, Robert as the registered agent, and the Salem address as the registered address for service of process for Miles Moss of NH, Inc. (formerly known as LIPSNH).  Fed. R. Evid. 201(b)(2), (c).

In support of their challenge to the sufficiency of service on LIPSNH, the service defendants rely on Fields' statement that following the sale of the LIPS companies' assets to Core, the Garden City address and Salem address ceased to be business locations of LIPSNH, and that thereafter no person working at either of those addresses was an employee or agent of LIPSNH for any purpose, including for purposes of service of process.  Doc. no. 12-2 at ¶¶ 4-7.  However, Fields' affidavit does nothing to change the fact that LIPSNH did not at any material time file a statement of change with the New Hampshire Secretary of State to name a new registered agent or to register any new address as the corporation's address for service of process.  As a result, at the time of service, the Salem address was LIPSNH's registered address for service of process as a matter of New Hampshire law, and Robert was LIPSNH's registered agent. Villano's hand-delivery to a person at the Salem address who identified himself as authorized to accept such service on Robert's behalf was therefore, at minimum, substantially compliant with the requirements of both Rule 4(h)(1)(B) and RSA

293-A:504.  Further, Villano's efforts to effect service resulted in LIPSNH's actual knowledge of this action and actual receipt of the summons and complaint.  Such substantial compliance is sufficient for purposes of Rule 12(b)(5).  See Precision Etchings, 953 F.2d at 23-25.  The service defendants' motion to dismiss is therefore denied as to defendant LIPSNH.

c.  Service on LIPSMA

On April 30, 2019, LIPSMA amended its articles of incorporation solely to change its name to Miles Moss of MA, Inc.  Doc. no. 15-2, exh. 8.  On June 4, 2019, LIPSMA filed an annual report with the Secretary of the Commonwealth of Massachusetts[6] which stated the address of LIPSMA's principal office as 210 Ricciuti Dr., Quincy MA 02169, and identified the company's registered agent as Robert, also at the Quincy address.  Id.

Villano attempted to serve LIPSMA on October 24, 2019, by hand-delivering a copy of the summons and complaint to the Quincy address, specifically to a person identified both as "Thomas Villano" (apparently the son of the plaintiff in this

---

[6] Notwithstanding the amendment of April 30, 2019, LIPSMA's annual report of June 4, 2019, stated its "exact" corporate name as "Long Island Pipe Supply of Massachusetts."

action) and as a "Branch Manager" of LIPSMA.  Doc. no. 3.[7]  At that time, the records maintained by the Massachusetts Corporations Division indicated that the Quincy address was LIPSMA's principal business address and address for service of process.  Doc. no. 16 at ¶¶ 2, 6; Doc. no. 15-2, exh. 4. Pursuant to Rule 201, the court takes judicial notice that, as of the date of this order, the corporate records database of the Corporate Division of the Secretary of the Commonwealth of Massachusetts continues to identify the Quincy address as the principal business address, Robert as the registered agent, and the Quincy address as the registered address for service of process for Miles Moss of MA, Inc. (formerly known as LIPSMA). Fed. R. Evid. 201(b)(2), (c).

In support of their challenge to the sufficiency of service on LIPSMA, the service defendants rely on Fields' statements that following the sale of the LIPS companies' assets to Core, the Quincy address ceased to be a business location of LIPSMA, and that thereafter no person working at that address was an

---

[7] On October 28, 2019, Villano made a further attempt to serve LIPSMA, by hand-delivery to the Garden City, New York address.  On October 29, 2019, Villano made yet a further such attempt, by hand-delivery and regular mail to the Woodbury, New York address. Because nothing in the record suggests that LIPSMA has ever maintained offices at either the Garden City address or the Woodbury address for any purpose, the court disregards the attempts to serve LIPSMA at those addresses.

employee or agent LIPSMA for any purpose, including for purposes of service of process.  Doc. no. 12-2 at ¶¶ 4-7.  However, LIPSMA, like the other LIPS companies, did not at any material time file an annual report or statement of change identifying a new principal office, registered agent, or registered address for service of process.  Fields' affidavit therefore does not provide grounds for modifying the conclusion that as a matter of Massachusetts law, at all material times Robert was LIPSMA's registered agent and the Quincy address was LIPSMA's principal office and registered address for service of process.  MA ST 156D §§ 1.40, 5.01, 5.02.  Villano's hand-delivery of the summons and complaint to a person identified as a managing employee at the Quincy address was therefore substantially compliant with the formal requirements of Rule 4(h)(1)(B), RSA 293-A:15.10, and Mass. R. Civ. Pr. 4(d)(2).  Further, because Villano's efforts to effect service resulted in LIPSMA's actual knowledge of this action and actual receipt of the summons and complaint, such substantial compliance is sufficient for purposes of Rule 12(b)(5).  See Precision Etchings, 953 F.2d at 23-25.  The service defendants' motion to dismiss is therefore denied as to defendant LIPSMA.

## 2. <u>Sufficiency of Service on Robert and Bradley</u>

Rule 4 also sets forth the requirements governing service on an individual defendant. A plaintiff may serve an individual by (i) delivering a copy of the summons and complaint to the individual personally; (ii) leaving a copy of the summons and complaint at the individual's usual place of abode with a person residing there of suitable age and discretion; or (iii) delivering a copy of the summons and complaint to an authorized agent for receiving such service. Fed. R. Civ. P. 4(e)(2). In the alternative, a plaintiff may serve an individual by following the law governing service of either the state where the district court is located (here, new Hampshire) or the state where the defendant is located when service is made (here, New York). Fed. R. Civ. P. 4(e)(1).

New Hampshire law provides for service on a nonresident individual defendant through sending the summons and complaint to the defendant's last known abode or place of business through registered mail, then providing proof of such mailing, together with a statutory fee and further copies of the summons and complaint, to the New Hampshire Secretary of State. RSA 510:4(II). Here, there is no suggestion in the record that Villano attempted service through the office of the New Hampshire Secretary of State.

17

Under New York law, service on an individual may be accomplished using three alternative methods.  First, a plaintiff may serve an individual by delivering the summons to the defendant in New York.  NY CPLR § 308(1).  Second, a plaintiff may serve an individual by delivering the summons to a person in New York of suitable age and discretion at the defendant's actual place of business, dwelling place, or usual place of abode, and by either mailing the summons to the defendant's last known residence or mailing the summons by first class mail in an envelope marked "personal and confidential" (and not otherwise indicating that it contains a summons or pertains to a legal action against the defendant) to the defendant's actual place of business.  NY CPLR § 308(2).  Third, and finally, service on an individual may be accomplished by delivering the summons to the defendant's designated agent for service of process in New York.  NY CPLR § 308(3).

As noted, as a matter of federal procedural law, minor formal defects in service may be disregarded so long as the defendant receives actual notice of the complaint and the method of service is in substantial compliance with the requirements of Rule 4.  See Precision Etchings, 953 F.2d at 23-25.

Prior to attempting service on Robert and Bradley, Villano's counsel relied on available public documents and on

paid online services in an attempt to identify one or more
addresses of record for those defendants.  Doc. no. 16, at ¶ 2.
Counsel's efforts uncovered two residential addresses for
Robert——the Woodbury, NY address and a Granby, CT, address——and
two residential addresses for Bradley——the Woodbury address and a
New York City address.  Id. at ¶ 3.  On the accurate
understanding that Robert was at all material times a resident
of New York, counsel disregarded the Connecticut address for
purposes of effecting service.  Id. at ¶¶ 5, 8.  Counsel further
verified that, although the deed to the premises at the Woodbury
address had been in the name of Wendy Moss since 1994, Wendy is
a member of Robert's and Bradley's family.  Id. at ¶¶ 5, 7.

On October 29, 2019, Villano attempted to serve Robert and
Bradley with process by hand-delivering copies of the summons
and complaint to a security guard at the gate of the Woodbury
address and mailing further copies to that same address.[8]  Doc.
no. 10.

In support of their challenge to the sufficiency of service
on Robert and Bradley, the service defendants offer those
defendants' affidavits that neither has resided at the Woodbury
address since 2002.  Doc. no. 12-3 at ¶ 4; doc. no. 12-4 at

_____

[8] The record reveals no grounds for Villano's decision to
disregard the New York City address associated with Bradley.

¶ 4.  That testimony is sufficient to rebut any presumption that the Woodbury address could have been either Robert's or Bradley's usual place of abode at or around the time Villano attempted service there.

Because Robert and Bradley have not maintained a residence at the Woodbury address for nearly two decades, Villano's efforts were not substantially compliant with the requirements of Rule 4(e)(2) or NY CPLR § 308.  The service defendants' Rule 12(b)(5) motion is therefore granted as to Robert and Bradley, and service on them is quashed.  Villano shall have thirty days from the date of this order to serve Robert and Bradley with process in this action.

II.  <u>Personal Jurisdiction</u>

LIPSMA and the Mosses (collectively, the "personal jurisdiction defendants") assert that this court may not properly exercise personal jurisdiction over them in connection with this action because they lack the requisite contacts with New Hampshire.  On that basis, the personal jurisdiction defendants move for dismissal of Villano's claims against them.

As to LIPSMA, Villano contends that it is subject to personal jurisdiction here because it (jointly with LIPS and LIPSNH) employed him to perform services in this state.  The

personal jurisdiction defendants argue that LIPSMA was not at
any time Villano's employer, and that Villano's presence in New
Hampshire was incidental to LIPSMA's contacts with him.

As to the Mosses, it is Villano's position that they are
properly subject to personal jurisdiction in New Hampshire
because they each took affirmative steps to supervise his work
activities and to dictate the terms and conditions of his
employment in this state.  The personal jurisdiction defendants
argue that Villano's allegations and evidentiary proffer are
insufficient to support the conclusion that any of the Mosses
purposefully availed themselves of the privilege of conducting
any activities in New Hampshire.

A.    Legal Standard

"To hear a case, a court must have personal jurisdiction
over the parties, that is, the power to require the parties to
obey its decrees." Astro-Med, Inc. v. Nihon Kohden Am., Inc.,
591 F.3d 1, 8 (1st Cir. 2009) (internal citation and quotations
omitted).  Where, as here, a defendant challenges personal
jurisdiction through a motion under Federal Rule of Civil
Procedure 12(b)(2), the plaintiff has the burden to establish
that the court may properly exercise such jurisdiction.  See
Hannon v. Beard, 524 F.3d 275, 279 (1st Cir. 2008); GT Solar

Inc. v. Goi, Case. No. 08-cv-249-JL, 2009 WL 3417587, at *2 (D.N.H. 2009); ICP Solar Techs., Inc. v. TAB Consulting, Inc., 413 F. Supp. 2d 12, 14 (D.N.H. 2006). Allegations of jurisdictional facts are construed in the plaintiff's favor. ICP Solar, 413 F. Supp. 2d at 14.

There are several appropriate methods for determining whether a plaintiff has met the burden to establish personal jurisdiction over a defendant, the "most conventional" of which (at the pleading stage of a proceeding) is the prima facie method. See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002) (citations omitted). The prima facie method requires the court to consider "only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." Boit v. Gar-Tec Prod., Inc., 967 F.2d 671, 675 (1st Cir. 1992). The court applies the prima facie method here.[9]

---

[9] Naturally, where the court denies a party's motion to dismiss for lack of personal jurisdiction in reliance on the prima facie standard, the party challenging such jurisdiction retains the right to a determination of jurisdictional issues on a preponderance-of-the-evidence standard at trial or otherwise at a subsequent pretrial plenary evidentiary hearing. See Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 676 (1st Cir. 1992); Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145-146 (1st Cir. 1995).

Under the prima facie standard, courts "take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim." Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998).

> To make a prima facie showing of [personal jurisdiction over a defendant], the plaintiff ordinarily cannot rest upon the pleadings, but is obliged to adduce evidence of specific facts. . . . [T]he district court acts not as a factfinder, but as a data collector. That is to say, the court, in a manner reminiscent of its role when a motion for summary judgment is on the table, . . . must accept the plaintiff's (properly documented) evidentiary proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing.

Foster–Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir. 1995). The plaintiff is thus ordinarily obliged to rely on specific facts supported by record evidence to defeat a defendant's motion to dismiss for lack of personal jurisdiction. See ICP Solar, 413 F. Supp. 2d at 14. The court may also consider uncontested facts submitted by the defendant. See Mass. Sch. of Law., 142 F.3d at 34. The court does not assess credibility or engage in other "differential factfinding." Foster–Miller, 46 F.3d at 145. "Despite the liberality of this approach, the law does not require [the court] . . . to credit conclusory allegations or draw farfetched inferences." Mass. Sch. of Law, 142 F.3d at 34 (internal quotations omitted).

23

B.   Analysis

"Personal jurisdiction implicates the power of a court over a defendant." Foster-Miller, 46 F.3d at 143.  The outer limits of that power are bounded by the requirements of federal constitutional due process.  Ins. Corp. of Ir. v. Compagnie Des Bauxites De Guinee, 456 U.S. 694, 702 (1982).  Where, as here, no federal statute governs personal jurisdiction, the district court looks to the law of the forum state to determine whether that law calls for any narrower limitation on the court's personal jurisdictional power.  See, e.g., Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995).  New Hampshire's long-arm personal jurisdiction statute creates a standard co-extensive with federal jurisdictional standards, so a federal court sitting in the District of New Hampshire may exercise personal jurisdiction wherever it is possible to do so within the limits of federal constitutional due process.  Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 287 (1st Cir. 1999); see also Phelps v. Kingston, 130 N.H. 166, 171 (1987).

Constitutional due process generally requires that the exercise of personal jurisdiction over a defendant "be 'consistent with traditional notions of fair play and substantial justice.'"  D'Almeida v. Stork Brabant B.V., 71 F.3d

50, 51 (1st Cir. 1995) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  Specifically, the due process clause of the Fourteenth Amendment "prohibits a court from imposing its will on persons whose actions do not place them in a position where they reasonably can foresee that they might be called to account in that jurisdiction." Phillips Exeter, 196 F.3d at 287 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).  The court's analysis of jurisdictional fairness centers on the quality and quantity of the defendant's contacts with the forum state.  See id. at 288.

Two forms of personal jurisdiction can apply to a nonresident defendant: general and specific.  Cossaboon v. Maine Med. Ctr., 600 F.3d 25, 31 (1st Cir. 2010).  Here, Villano relies only on specific jurisdiction.  The court limits its analysis accordingly.

Specific personal jurisdiction allows a court to consider a claim against a defendant so long as the claim "relates sufficiently to, or arises from, a significant subset of contacts between the defendant and the forum." Phillips Exeter, 196 F.3d at 288.  The courts of the First Circuit conduct a three-part inquiry to determine whether, in connection with a given claim, the exercise of specific personal jurisdiction over a nonresident defendant is appropriate:

> (1) whether the claim directly arises out of, or
> relates to, the defendant's forum state activities;
> (2) whether the defendant's in-state contacts
> represent a purposeful availment of the privilege of
> conducting activities in the forum state, thereby
> invoking the benefits and protections of that state's
> laws and making the defendant's involuntary presence
> before the state's courts foreseeable; and (3) whether
> the exercise of jurisdiction is reasonable.

Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 35 (1st Cir. 2016) (citations and internal modifications and quotation marks omitted).  The plaintiff bears the burden in connection with the first two elements of the inquiry.  The burden then shifts to the defendant to "present a compelling case," in light of the strength of the plaintiff's showing in connection with the first two elements, that the exercise of jurisdiction would not be reasonable.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-478 (1985); see also Baskin-Robbins, 825 F.3d at 38.  All three elements must be established before specific personal jurisdiction may attach. Phillips v. Prairie Eye Center, 530 F.3d 22, 27 (1st Cir. 2008). At all steps of the inquiry, the court analyzes each defendant's contacts with the forum separately.  Calder v. Jones, 465 U.S. 783, 790 (1984).

1.  <u>Jurisdictional Facts</u>

The parties agree as to all material jurisdictional facts, and disagree only as to the legal conclusions that may properly be drawn from them. Thus, the personal jurisdiction defendants' evidentiary proffer is in all material respects consistent with Villano's jurisdictional allegations. In what follows, the court therefore summarizes Villano's material allegations and the parties' evidentiary proffers together.

LIPS and LIPSNH were at all relevant times affiliated companies under the ownership and control of the Mosses,[10] doc. no. 12-2 at ¶ 2, and LIPSMA was a wholly-owned subsidiary of LIPS, <u>id.</u>, doc. no. 1-2 at ¶ 3. The parties are in agreement that the LIPS companies shared common management and common ownership. Doc. no. 12-2. at ¶ 2; doc. no. 1-2 at ¶¶ 7, 19. Villano alleges that the LIPS companies, in addition, shared centralized control of labor relations and had interrelated operations; defendants offer no contrary evidence. Doc. no. 1-2 at ¶ 19.

_____

[10] Villano alleges that LIPSNH was a wholly-owned subsidiary of LIPS, but offers no evidence in support of that allegation. The personal jurisdiction defendants offer evidence tending to establish that LIPS and LIPSNH were affiliated companies, each wholly owned by the Mosses. This immaterial disagreement regarding ownership of LIPSNH is the sole point of direct conflict between the parties' versions of the relevant facts.

Villano offers his affidavit stating that in July 2012, Robert interviewed him in Salem, New Hampshire, for a position as director of the information technology department for all three of the LIPS companies. Doc. no. 15-4 at ¶ 1. The parties are in agreement that after the LIPS companies hired Villano for that position, he maintained an office in LIPSNH's New Hampshire offices and primarily served the LIPS companies from that office. Id. at ¶¶ 3-4; doc. no. 15-4 at ¶ 10. Villano alleges that he received his compensation and W-2 forms at all material times from LIPSMA. Doc. no. 1-2 at ¶ 14. It is Villano's position that he was jointly employed by LIPS, LIPSMA, and LIPSNH during the entire tenure of his employment by the LIPS companies. Id. at ¶ 18.

According to Villano's affidavit testimony, Robert expressly instructed Villano that each of the Mosses would supervise his employment. Doc. no. 15-4 at ¶ 6. In fact, according to Villano, all three Mosses frequently and regularly supervised Villano's work, both in person and telephonically. Id. at ¶¶ 7-9. Villano alleges that employees of all three of the LIPS companies supervised his work, set his work schedule, issued job-related instructions, and dictated his travel requirements. Doc. no. 1-2 at ¶ 16. However, notwithstanding that Villano primarily served the LIPS companies from an office

in LIPSNH's headquarters, received his compensation from LIPSMA, and received supervision from employees of all three entities, the LIPS companies classified Villano in their internal records as an employee only of LIPS.  Doc. no. 15-4 at ¶¶ 8-9.

According to Villano's affidavit testimony, Robert told him that his employment was terminated on July 16, 2018, while Villano was in New Hampshire.  Doc. no. 15-4 at ¶ 12.  Villano alleges that all three Mosses contributed to the decision to terminate his employment.  Doc. no. 1-2 at ¶¶ 69-72, 89-90. While none of the Mosses regularly conducts business "on [his] own behalf" in New Hampshire, doc. no. 12-3 at ¶ 5, doc. no. 12-4 at ¶ 5, doc. no. 12-5 at ¶ 5, the Mosses do not deny regularly visiting or conducting business in New Hampshire on behalf of one or all of the LIPS companies, including in connection with the terms and conditions of Villano's employment there.

### 2.  Personal Jurisdiction Over LIPSMA in New Hampshire

Villano appears to take the position that, because he was (in his view) jointly employed by all three LIPS companies, all of the LIPS companies' contacts with New Hampshire may be imputed to LIPSMA for jurisdictional purposes.  The court disagrees.  Regardless of whether it may ultimately be established that the LIPS companies were Villano's joint

employers, each defendant's forum-related contacts must be evaluated independently. Calder, 465 U.S. at 790; see also Daimler AG v. Bauman, 571 U.S. 117, 134-136 (2014).

Villano has nevertheless met his burden to establish a prima facie case that LIPSMA is properly subject to personal jurisdiction in New Hampshire in connection with his claims. Villano's evidentiary proffer, viewed in light of the Rule 12(b)(2) prima facie standard, establishes that LIPSMA (together with the other LIPS companies) hired Villano to perform services for it in New Hampshire and in other locations (including its own facilities in Massachusetts), and compensated him for his services performed primarily in New Hampshire. LIPSMA employees (together with employees of the other LIPS companies) supervised Villano's work, set his work schedule, issued job-related instructions, and dictated his travel requirements.

The first element of the specific personal jurisdiction inquiry, relatedness, requires the plaintiff to show that the claim arises directly out of specific contacts between the defendant and the forum state. Sawtelle, 70 F.3d at 1389. The courts apply a "flexible, relaxed standard" in determining whether the plaintiff has met the burden to establish relatedness. Pritzker v. Yari, 42 F.3d 53, 61 (1st Cir. 1994). Here, Villano's claims arise from the terms and conditions of

his employment and from the termination of his employment. Because the record supports the conclusion for prima facie purposes that LIPSMA had a degree of control over the terms and conditions of Villano's employment, which occurred primarily in New Hampshire, Villano has met his burden in connection with relatedness.

The second element of the inquiry, purposeful availment, requires the plaintiff to show that the defendant "deliberately targeted . . . behavior toward the society or economy of a particular forum such that the forum should have the power to subject the defendant to judgment regarding that behavior." Baskin-Robbins, 825 F.3d at 36 (internal quotation marks and modifications omitted) (quoting Carreras v. PMG Collins, LLC, 660 F.3d 549, 555 (1st Cir. 2011)). The function of the purposeful availment inquiry is to ensure that the defendant will not be subjected to jurisdiction in a foreign forum "based solely on random, isolated or fortuitous contacts." Id. (citations and internal quotation marks omitted). Thus, the two "cornerstones" of purposeful availment are voluntariness and foreseeability. PREP Tours, Inc. v. Am. Youth Soccer Org., 913 F.3d 11, 19-20 (1st Cir. 2019). Voluntariness requires that the defendant's contacts with the forum state result from actions of the defendant rather than from from the unilateral actions of

the plaintiff.  See id. at 20.  Foreseeability requires that the defendant's conduct and connection to the forum state "are such that [the defendant] should reasonably anticipate being haled into court there."  Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)).

Villano's purposeful availment showing is sufficient to meet his burden.  The record supports the conclusion for prima facie purposes that LIPSMA elected to hire an employee in New Hampshire, compensated that employee for his services performed primarily in New Hampshire, and supervised the terms and conditions of his employment there.  In light of these voluntary actions, it was foreseeable that LIPSMA could be haled into court in New Hampshire in connection with claims arising out of the terms and conditions of Villano's employment.  This is sufficient to satisfy Villano's burden in connection with purposeful availment.

Because Villano has made a sufficient showing in connection with the relatedness and purposeful availment elements of the inquiry, the burden shifts to LIPSMA to show that it would nevertheless be unreasonable to require it to litigate here. They have not even attempted to meet this burden.  The court nevertheless reviews the jurisdictional record to determine

whether it supports the conclusion that it would be unreasonable to require LIPSMA to litigate here.

The courts consider five factors, sometimes referred to as the "gestalt factors," in determining whether the defendant has met its burden at the final step of the inquiry. Ticketmaster-New York v. Alioto, 26 F.3d 201, 209 (1st Cir. 1994). The gestalt factors are as follows: (1) the burden on the defendant if the defendant is required to litigate in the forum, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interests of judicial efficiency, and (5) the relative policy interests of all candidate fora. See Baskin-Robbins, 825 F.3d at 38.

As to the first gestalt factor—the burden of litigating in New Hampshire—it is of course necessarily burdensome to defend a lawsuit. However, only in the case of a special or unusual burden does this factor weigh against exercise of personal jurisdiction. Hannon v. Beard, 524 F.3d 275, 285 (1st Cir. 2008). Here, defendants concede personal jurisdiction over LIPS and LIPSNH, such that the LIPS companies will be litigating in New Hampshire regardless of whether this court considers Villano's claims specifically against LIPSMA. Moreover, because LIPSMA is a wholly-owned subsidiary of LIPS, under common

management with LIPS and LIPSNH, it appears highly unlikely that requiring LIPSMA to litigate in this forum together with its closely related co-defendants will pose any special or unusual burden on it.

The second gestalt factor—the forum state's interest in adjudicating the dispute—also weighs in favor of the exercise of personal jurisdiction.  New Hampshire has at least some interest in providing a forum for the redress of injuries to persons employed in New Hampshire.  So long as the forum state has at least some degree of interest in adjudicating the dispute, this factor weighs in favor of exercising personal jurisdiction over the foreign defendant.  Id.

The third gestalt factor—the plaintiff's interest— virtually always weighs in favor of the exercise of personal jurisdiction over the foreign defendant.  Sawtelle, 70 F.3d at 1395.  No grounds exist for disturbing that norm where, as here, the plaintiff will be litigating his dispute in the forum state whether or not the court exercises jurisdiction over the specific defendant.  Similarly, because it is not in the interests of judicial efficiency to require Villano to pursue his claims against the defendants in multiple fora, the fourth gestalt factor—the interests of judicial efficiency—likewise weighs in favor of the exercise of jurisdiction over LIPSMA.

Finally, the fifth gestalt factor—relative policy interests of New Hampshire and Massachusetts—weighs mildly against the exercise of jurisdiction over LIPSMA here.  This is because Massachusetts arguably has a greater interest in providing a forum for this litigation than New Hampshire.

Even assigning disproportionate weight to the fifth gestalt factor, taken together the factors do not suggest in any degree that the exercise of jurisdiction over LIPSMA in New Hampshire would be so unfair or unreasonable as to raise constitutional concerns.  For these reasons, the personal jurisdiction defendants' motion to dismiss is denied as to LIPSMA.

3.  Personal Jurisdiction Over the Mosses in New Hampshire[11]

Villano has likewise met his burden to establish a prima facie case that each of the Mosses is properly subject to

---

[11] Although Robert and Bradley have not yet been properly served in this action, such that this court may not properly exert jurisdiction over them for general purposes, by filing a Rule 12(b)(2) motion to dismiss they have effectively submitted themselves to the jurisdiction of the court for the limited purpose of permitting the court to determine whether the exercise of personal jurisdiction over them could be proper. See Ins. Corp. of Ireland, 456 U.S. at 706.  The court therefore considers the merits of the personal jurisdiction defendants' motion to dismiss as to Robert and Bradley, notwithstanding that they have not yet been properly served.  In the event Villano fails properly to serve Robert or Bradley, the unserved defendant or defendants will be dismissed from this action on Rule 12(b)(5) grounds.

personal jurisdiction in New Hampshire in connection with his claims. Villano's evidentiary proffer, viewed in light of the Rule 12(b)(2) prima facie standard, establishes that Robert interviewed Villano in New Hampshire for a position in which he would direct the information technology department for all three of the LIPS companies. Robert instructed Villano that he would perform services for the LIPS companies primarily from New Hampshire. After Villano's hire, all three of the Mosses frequently and regularly supervised Villano's work, both in person and telephonically. All three Mosses also contributed to the decision to terminate Villano's employment, and Robert communicated that decision to Villano by telephone while Villano was in New Hampshire.

As to the relatedness inquiry, Villano's claims arise from the terms and conditions of his employment and from the termination of his employment. Because the record supports the conclusion for prima facie purposes that each of the three Mosses regularly exercised control over the terms and conditions of Villano's employment, Villano has met his burden in connection with relatedness.

As to purposeful availment, Villano has again met his burden. Robert traveled to New Hampshire in order to interview Villano to work for the LIPS companies while primarily based in

New Hampshire.  After hiring him, Robert exercised control over
the terms and conditions of Villano's employment in New
Hampshire, contributed to the decision to terminate Villano's
employment, and informed Villano of his termination while
Villano was in New Hampshire.  Bradley and Michael exercised
control over the terms and conditions of Villano's employment in
New Hampshire and contributed to the decision to terminate
Villano's employment in New Hampshire.  The Mosses voluntarily
took actions to supervise the employment of a New Hampshire
employee and decided to terminate that employee.  As such, the
Mosses availed themselves of the obligations, protections, and
benefits of New Hampshire employment law.  It was therefore
foreseeable that the Mosses might be haled into a New Hampshire
court in connection with claims arising out of the terms and
conditions of Villano's employment.

The burden therefore shifts to the personal jurisdiction
defendants to make a compelling case that it would nevertheless
be unreasonable for the Mosses to be required to litigate here.
Again, they have made no effort to meet this burden.  The court
nevertheless reviews the jurisdictional record to determine
whether it supports the conclusion that it would be
unreasonable, in light of the gestalt factors, to require the
Mosses to litigate here.

For the same reasons discussed in connection with LIPSMA, there would be no special or unusual burden if the Mosses were required to litigate in New Hampshire.  New Hampshire has at least some interest in adjudicating Villano's claims against the Mosses; Villano has an interest in litigating this dispute in New Hampshire; it is in the interests of judicial efficiency for Villano to pursue his claims in a single forum; and weighing the policy interests of New Hampshire against those of New York is effectively a draw.  The five gestalt factors, therefore, do not suggest that the exercise of jurisdiction over any of the three Mosses in New Hampshire would be so unfair or unreasonable as to raise constitutional concerns.  For these reasons, the personal jurisdiction defendants' motion to dismiss is denied as to the Mosses.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss (doc. no. 12) is granted in part and denied in part as discussed above.  Specifically, the motion is granted as to defendants Robert Moss and Bradley Moss for insufficiency of service and is otherwise denied.  Service on Robert Moss and Bradley Moss is quashed, and Villano shall have until April 16, 2020, to serve Robert Moss and Bradley Moss with process in this action.

Pending such service, the court will retain Villano's action to the extent filed against those defendants.

      SO ORDERED.

                                   _____
                                   Landya McCafferty
                                   United States District Judge

March 16, 2020

cc:  Counsel of Record